UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,  )
                           )
            Plaintiff,     )
                           )
v.                         )    No.:  3:11-CR-139
                           )          (VARLAN/SHIRLEY)
WILLIAM L. BOST,           )
                           )
            Defendant.     )

## MEMORANDUM AND ORDER

This criminal case is before the Court for consideration of the Report and Recommendation, entered by United States Magistrate Judge C. Clifford Shirley, Jr., on May 3, 2012 (the "R&R") [Doc. 28]. The R&R addressed the defendant's Motion to Suppress Evidence Obtained as Result of Unlawful Search [Doc. 24] and recommended that the motion be denied. The time for filing objections to the R&R passed, without the filing of any objections by the parties. However, after the passing of the deadline for filing of objections, counsel for the defendant requested an extension of time to file objections [Doc. 29], a request which was unopposed by the United States [*Id.*, p. 2]. The Court granted the defendant's request [Doc. 31]. The defendant then filed an Objection to Magistrate Judge's R&R [Doc. 32], to which the government filed a response [Doc. 34].

## I.     Relevant Background

The defendant is charged in a single-count indictment [Doc. 9] with possessing with intent to distribute twenty-eight grams or more of crack cocaine, on or about November 1,

2011.  After a hearing and considering the parties' submissions, Magistrate Judge Shirley

made the following findings of fact:

> The Court finds the following facts to be relevant in addressing the
> issues presented: Officer Lane observed the Defendant's truck illegally
> changing lanes when it crossed a solid white line in close proximity to
> other cars without signaling.  Officer Lane initiated a traffic stop, and
> the Defendant delayed in pulling his truck into the shoulder of the exit
> ramp. Officer Lane approached the truck, and the Defendant, who was
> not wearing a seatbelt, provided him with a valid license and vehicle
> registration, and informed him that he did not have proof of insurance
> in the truck.  Officer Lane informed the Defendant the reasons he
> stopped him, and the two men engaged in a calm conversation about
> turn signals.  During the conversation, Officer Lane observed three
> cellular telephones in the truck, and he asked the Defendant about the
> telephones.  The Defendant did not provide a clear response as to why
> he had three cellular telephones, and Officer Lane felt as though the
> Defendant's demeanor changed at that point.
>
> After not receiving a satisfactory response about the telephones, Officer
> Lane asked the Defendant if he had drugs or alcohol in the truck and
> the Defendant responded that he did not.  Officer Lane then asked if he
> could search the truck, and the Defendant politely declined to give
> consent.  Officer Lane told the Defendant to step out of the truck and
> at that point perceived the Defendant putting a hand in between the
> center console and a child's seat in the front passenger seat.  Officer
> Lane pulled his weapon and loudly and quickly instructed the
> Defendant three times to get his hand out from between the seats and
> to show his hands. After several seconds, the Defendant eventually
> complied.  Officer Lane again told the Defendant to get out of the truck,
> and the Defendant did so.
>
> Officer Lane immediately handcuffed the Defendant, who did not
> struggle or attempt to flee.  Officer Lane told the Defendant that if he
> moved, he would tase him.  After the Defendant did not spread his legs
> to the officer's liking, Officer Lane pushed the Defendant's legs open
> with his feet.  Officer Lane then patted the Defendant down and did not
> find any weapons or contraband. Officer Lane felt a bulge in the
> Defendant's front pocket which the Defendant informed him was

money. Officer Lane repeatedly told the Defendant that he thought he was hiding something and asked him what it was.

Officer Lane put the Defendant on the hood of his cruiser, still in handcuffs, and the two talked more for a short time. Officer Lane observed that the Defendant was chewing on something in his mouth, and he instructed the Defendant to open his mouth. Approximately two seconds later, Officer Lane lunged forward reached into the Defendant's mouth. Officer Lane thought the Defendant started to chew rapidly after he asked him about what was in his mouth. While the Defendant and the officer struggled, Officer Hunley arrived and put his hands on the Defendant's neck. The three men went to the ground, and the Defendant spit out the chewing gum that was in his mouth. Toward the end of the struggle, Officer Wallace and his K-9 arrived at the scene. The officers found three bags of crack cocaine: one underneath the rear bumper of the Defendant's truck, one on the ground near the struggle at the cruiser, and one on the Defendant's person. The K-9 alerted the truck, but when it was searched no contraband was found. The officers also seized the three cellular telephones in the truck.

[Doc. 28, pp. 13-15].

In his motion to suppress, the defendant argued that all the evidence discovered and seized during the traffic stop should be suppressed because the lawful stop became an impermissible seizure when Officer Lane lacked reasonable suspicion to justify further detention of the defendant and used unreasonable physical restraint beyond the scope of the stop and without probable cause. The defendant also argued that even if the initial detention of the defendant was proper, the degree of intrusion into the defendant's body was not reasonably related in scope to the circumstances and that all seized narcotics and cellular telephones should be suppressed as fruits of the poisonous tree.

The first issue the magistrate judge addressed was the propriety of the officer's detention and frisk of the defendant.[1] He found that there was insufficient proof to make a finding as to the amount of time it would reasonably take for Officer Lane to issue an illegal lane citation, and therefore it could not be determined whether that amount of time had been exceeded when Officer Lane pulled his weapon and handcuffed the defendant upon his exit from the truck—thereby transforming the initial traffic stop into a detention for which the officer needed reasonable suspicion. The magistrate judge concluded, however, that regardless of the point at which the scope of the initial stop was exceeded, the intervening fact of the defendant having put his hand out of the officer's view and his delay in complying with the officer's order to show his hands provided Officer Lane the requisite reasonable suspicion to extend the traffic stop beyond what was permissible based upon the initial purpose of the traffic stop. That is, because the officer had an objectively reasonable belief that the defendant may have been armed and dangerous.

The magistrate judge then determined that law enforcement had conducted two separate searches of the defendant's person. The first search, when Officer Lane placed the defendant in handcuffs behind the truck, spread his legs, and patted him down, the magistrate judge to be a permissible *Terry* stop because the officer had a reasonable belief that the defendant may have been armed and dangerous [Doc. 28, pp. 25-27]. The second search, which occurred several minutes after the first search when Officer Lane forcibly reached into the defendant's mouth, the magistrate judge found to be "unreasonable as it was not based

---

[1]The defendant conceded that the initial traffic stop was lawful.

upon specific and articulable reasonable suspicion of narcotics activity, was greatly intrusive, and was not reasonably related to the first permissible search of the Defendant for weapons." [*Id.*, p. 29]. Even though the second search of the defendant was unlawful, the magistrate judge held that because the evidence obtained during the traffic stop would inevitably have been discovered and acquired at the scene had the unlawful search not occurred, the evidence obtained during the traffic stop and search—including three bags of cocaine, three cellular telephones, and any other items seized—was admissible at trial under the inevitable discovery doctrine [*Id.*, pp. 30-33].

## II.  Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 59(b) of the Federal Rules of Criminal Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected. In doing so, the Court has carefully considered the R&R [Doc. 28], the parties' underlying and supporting briefs, the defendant's objection to the R&R [Doc. 32], and the government's response to those objections, all in light of the relevant law. For the reasons set forth herein, the Court will overrule the defendant's objections [Doc. 32], accept in whole the R&R [Doc. 28], and deny the defendant's motion to suppress [Doc. 34].

## III.  Analysis

The Court will address each of the defendant's objections in turn.[2]

---

[2]In its response, the government submits that the defendant's objections add nothing new, that the defendant's objections are unsupported by fact or law, that Magistrate Judge Shirley's R&R addresses and answers every point raised by the defendant, and that the government stands on its previously-filed briefs [Doc. 34].

The defendant first objects to Magistrate Judge Shirley's finding that Officer Lane had reasonable suspicion to justify the initial detention of the defendant due to the intervening fact of the defendant having his hand out of view and delaying in complying with the officer's order to show his hands, because this conduct gave rise to the officer's reasonable suspicion that the defendant may be armed and dangerous [Doc. 32, pp. 3-5]. The defendant asserts that this finding is based primarily on Officer Lane's testimony and is not supported by the evidence because the angle of the in-car camera does not depict what the defendant was doing with his hands at the time Officer Lane asked the defendant to exit the vehicle. The defendant asserts that based on the minimal amount of time (approximately 10 seconds) that elapsed between the officer's initial command to the defendant to "show his hands" and when the defendant exited the vehicle, it "appears likely" that Officer Lane's testimony and his statements as related in the affidavit in support of the application for a search warrant [Doc. 24-2] are exaggerated.

The Court will **OVERRULE** this objection. In the R&R, Magistrate Judge Shirley specifically noted that "the in-car video does not show the Defendant's hand movements or lack of compliance with instructions to show his hands[,]" but that Officer Lane's testimony was not discredited at the suppression hearing and no evidence was presented to rebut the officer's version of the events. The Court also notes that Officer Lane's testimony at the suppression hearing regarding his observation of the defendant putting his hand in-between the passenger seat and the center console and refusing the officer's request to show his hands was consistent with the affidavit in support of the complaint and search warrant [Doc. 24-2].

Beyond asserting that it "appears likely" that Officer Lane's testimony was exaggerated, the defendant provides no additional evidence or facts to support his assertion that the officer's testimony or version of events was exaggerated. Furthermore, the magistrate judge reviewed and considered the in-car video at the suppression hearing, including the period of time that elapsed between Officer Lane's command to the defendant and when the defendant exited the vehicle, and found this to be a sufficient amount of time for the events Officer Lane described to have transpired. The defendant has presented no evidence to rebut this finding.

The defendant also objects to Magistrate Judge Shirley's finding that Officer Lane possessed reasonable suspicion of the presence of weapons based upon the officer's observation of three cellular telephones in the defendant's truck. The defendant asserts that the magistrate judge's finding that "[i]t is reasonable for an officer to believe that a suspect may have a weapon if the suspect is involved in drug trafficking[]" based on Officer Lane's testimony that he was trained that the presence of multiple cellular telephones in a vehicle is an indicator of narcotics activity, is directly contrary to *United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002) [Doc. 32, pp. 5-6]. The defendant also objects to the magistrate judge's finding that the defendant's act of putting his hand in-between the center console and the passenger seat supports a reasonable, articulable suspicion that the defendant had drugs in the vehicle, asserting that this finding is contrary to *United States v. Blair*, 524 F.3d 740 (6th Cir. 2008).

The Court has reviewed *Townsend* and *Blair* and does not find Magistrate Judge Shirley's findings, nor his conclusions in the R&R, to be contrary to *Townsend*, *Blair*, or

7

other Sixth Circuit precedent.  Here, the magistrate judge found that there was insufficient proof to make a finding as to the amount of time it would have reasonably taken Officer Lane to issue a citation and therefore it could not be determined whether that amount of time had been exceeded.  The magistrate judge also found that the intervening fact of the defendant having his hand out of view and delaying in showing his hands to the officer provided reasonable suspicion to extend the traffic stop due to Officer Lane's reasonable belief that the defendant was armed and dangerous.  Thus, the issue in this case is whether Office Lane had reasonable suspicion that the defendant was armed and dangerous sufficient to justify a pat down search.

In *Townsend* and *Blair*, on the other hand, the Sixth Circuit addressed whether certain circumstances surrounding a traffic stop were enough to constitute reasonable suspicion of ongoing criminal activity sufficient to justify prolonging the traffic stop until a canine unit arrived.  The inquiry in this case and the inquiries in *Townsend* and *Blair* are thus distinct because the "interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him" is a "more immediate" interest than the governmental interest in investigating crime.  *Terry v. Ohio*, 392 U.S. 1, 23 (1968).  As noted by Magistrate Judge Shirley, "it was a reasonable precaution for Officer Lane, who was alone at the scene and had not yet informed dispatch or any other officers of the situation and his location, to handcuff the Defendant while he briefly patted him down to determine if he had any weapons on his person." [Doc. 28, p. 26].  *See Houston v. Clark Cnty. Sheriff Deputy Joe Does 1-5*, 174 F.3d

809, 815 (6th Cir. 1999) (holding that the use of handcuffs by officers was reasonably necessary to protect the officers' safety during an investigation).

The Court finds *Townsend* and *Blair* to be distinguishable in other aspects as well. In *Townsend*, after two men were lawfully stopped for speeding, the stop escalated into a full search of the vehicle which ultimately exposed hidden counterfeit currency. *Townsend*, 305 F.3d at 539-40. The district court found that the detention of the vehicle and of the two defendants until a canine unit arrived was beyond the time reasonably necessary to issue a traffic citation and lacked reasonable suspicion in violation of the Fourth Amendment. *Id.* at 538. The Sixth Circuit affirmed and upheld the district court's suppression of the counterfeit currency discovered in the vehicle during the search. *Id.*

On appeal, the government pointed to the following factors, which it argued gave rise to the officers' reasonable suspicion of more extensive criminal activity sufficient to justify the continued detention of the defendants beyond the time reasonably necessary to issue the traffic citation: (1) the driver's behavior at the car was unusual—he immediately raised his hands in the air as the officers approached his car, he was unusually cooperative, telling the officers he had been driving 85 mph when they had clocked him going only 76 mph, he immediately produced proof of insurance which one of the officers testified he found reflective of "an unusual eagerness to end the stop quickly"; (2) the defendants produced dubious travel plans; (3) the defendants were traveling from a source city for narcotics to a destination city for narcotics; (4) there were three cellular telephones in the passenger compartment of the car; (5) there was a Bible in the car; (6) when frisked, the defendants

appeared to have rolls of currency in each of their pockets; (7) one of the defendants had previously been arrested on a weapons charge; (8) the defendants appeared nervous; (9) the interior of the car was cluttered with food wrappers and clothing; and (10) the driver was not the registered owner of the car. *Id.* at 542-45. The government argued that the district court held that cellular telephones cannot, in any way, contribute to reasonable suspicion. *Id.* at 543-44. The Sixth Circuit, however, found this reading of the district court's opinion to be "aggressive," noting that the district court had only observed that because of the increased commonality of cellular phones in recent years, the presence of multiple cellular phones was not as indicative of "tools of the drug trade" as they used to be. *Id.* The Sixth Circuit noted that while having three cellular phones in one car "does seem slightly odd," the panel was "certainly not prepared to hold that the presence of several cell phones cannot contribute to reasonable suspicion of criminal activity[,]" and the factor of the cellular phones was "weak and . . . not accompanied in this case by more substantially suspicious factors." *Id.* The *Townsend* court did not hold that the presence of multiple cellular phones does not contribute to an officer's reasonable suspicion of criminal activity, but held that it was a weak factor which, unaccompanied in that case by other, more substantially suspicious factors, did not support a finding of reasonable suspicion of criminal activity.

Here, Magistrate Judge Shirley found that Officer Lane had a reasonable belief that the defendant may have been armed and dangerous due to the defendant's conduct in putting his hands out of view after he was asked to exit his vehicle, and because the defendant did not place his hands into view until after the officer pulled out his weapon and pointed it at

the defendant while yelling for him to show his hands. This was in addition to the officer's observation of the three cellular telephones in the truck and the officer's training that multiple cellular phones may be an indicator of possible involvement in narcotics trafficking. Thus, the magistrate judge found that in addition to the presence of the multiple cellular phones, which, according to *Townsend*, is a "weak" factor that alone may not justify reasonable suspicion of criminal activity, the defendant's act of hiding his hands and not showing them when asked supported the officer's reasonable belief that the defendant could be armed and dangerous.

The Court also finds *Blair* distinguishable. As noted above, *Blair* addressed whether the circumstances surrounding a traffic stop—the time of night, the defendant's presence in a high-crime area, nervous behavior, and act of reaching under the seats—were enough to constitute reasonable suspicion of ongoing criminal activity sufficient to justify prolonging a traffic stop until a canine unit arrived. *Blair*, 524 F.3d 740. In *Blair*, the Sixth Circuit noted several times the contradictory, equivocal, and inconsistent nature of the officers' testimony. *Id.* at 751-52. In this case, on the other hand, the magistrate judge found Officer Lane's testimony to be consistent and credible. The defendant has presented no evidence in his objection which causes the Court to reach a different conclusion. Additionally, in *Blair*, the Sixth Circuit found that the officer who had stopped the defendant was not certain he was stopping the right vehicle and did not know why the defendant was being stopped therefore the officer attempted to justify his suspicions on the nervousness of the defendant. Here, however, there is no question that Officer Lane's initial stop of the defendant was lawful and

the in-car video clearly shows the defendant's vehicle crossing over a solid white line in close proximity to another vehicle [Doc. 28, p. 17]. *See id.* at 751-52.

Finally, the defendant objects to Magistrate Judge Shirley's finding that the evidence seized is admissible pursuant to the inevitable discovery doctrine because "it is clear that the subsequently obtained evidence would not have been inevitably discovered by lawful means. Viewing affairs as they existed at the instant before the unlawful search, no evidence of narcotics activity was in plain view or otherwise known to Officer Lane." [Doc. 32, p. 8].

The Court will **OVERRULE** this objection as well. Viewing the circumstances in the instant before the unlawful second search occurred, the Court agrees with the magistrate judge that the three bags of cocaine discovered at the scene of the stop would have inevitably been discovered at the scene had the unlawful second search not occurred. As recited by Magistrate Judge Shirley, the inevitable discovery doctrine requires the Court to determine, viewing the affairs as they existed at the instant before the unlawful search was conducted, whether the evidence to be suppressed would have inevitably been discovered had Officer Lane not unreasonably searched the defendant's mouth. *See United States v. Kennedy*, 61 F.3d 494, 497-99 (6th Cir. 1995) (discussing the inevitable discovery doctrine). The first bag was discovered in close proximity to the location of the officer's first search of the defendant's person for weapons, and the magistrate judge determined that this bag fell out of the defendant's clothing as a result of that first permissible pat down, not the second unlawful search. The defendant has presented nothing to call into question this conclusion. Furthermore, because the first bag was in plain view, the magistrate judge found that its

discovery would have given the officer probable cause to arrest the defendant for possession of narcotics, following which, the second and third bags would have inevitably been discovered incident to a lawful search, even if the unlawful second search of the defendant's mouth had not occurred. The defendant has presented no evidence or law causing the Court to question these findings.

## IV. Conclusion

In sum, after reviewing the record in this case, including the R&R, the objection, the underlying briefs, and the relevant law, the Court determines that the magistrate judge fully and appropriately considered the arguments in support of the motion to suppress. Further, the Court agrees with the magistrate judge's analysis and findings in their entirety. Accordingly, and for the reasons given above, the defendant's objection to the R&R [Doc. 32] is **OVERRULED**, the R&R [Doc. 28] is **ACCEPTED IN FULL**, and the defendant's motion to suppress [Doc. 24] is **DENIED**.

IT IS SO ORDERED *NUNC PRO TUNC* JUNE 15, 2012.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE